[Nos. 16217-2-II; 16578-3-II.    Division Two.    July 12, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. JAYSON
THOMAS SMITH, *Appellant.*

*Ronald D. Heslop,* for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney,* and *Barbara Corey-Boulet, Deputy,* for respondent.

ALEXANDER, J. — Jayson Thomas Smith appeals an order of the Pierce County Superior Court denying his motion to withdraw guilty pleas to a charge of second degree murder and two charges of second degree assault. He contends on appeal that all of the pleas were involuntary and, in one instance, entered without an understanding of the nature of the charge. Smith also asserts that the trial court erred in

ordering the sentence on one of the second degree assault convictions to run consecutively to the sentences imposed on the conviction for second degree murder and the other conviction for second degree assault. We affirm in part, reverse in part, and remand for resentencing.

On July 22, 1991, Jayson Thomas Smith drove to Travis Greenlee's apartment and from his car fired shots from a pistol toward the apartment. Smith claimed that Greenlee had threatened to harm Smith's family, and, therefore, he wanted to "let [Greenlee] know not to hurt me or my family". One of the bullets fired by Smith struck and killed Willie Greenlee, a relative of Travis Greenlee. Willie Greenlee had been standing in a doorway of the apartment when he was struck by the bullet. Another shot fired by Smith smashed through a window of the apartment and struck and wounded Cynthia Davis. Smith was eventually charged in Pierce County Superior Court with first degree murder and second degree assault.

On February 3, following negotiations with the State, Smith entered a plea of guilty to the charge of second degree assault and a reduced charge of second degree murder. The trial court, after questioning Smith in open court, determined that his pleas were made voluntarily, knowingly, and intelligently, and that a factual basis existed to support each plea.

Approximately 2 weeks later, while Smith was in the Pierce County Jail awaiting sentencing, he allegedly attacked and injured a Pierce County custodial officer. Smith claimed that the officer had provoked the attack through a barrage of insults. As a result of the incident, Smith was charged with second degree assault. On March 26, 1992, he pleaded guilty to that charge. The trial court again questioned Smith regarding his plea, and determined that it was made "freely and voluntarily".

Prior to sentencing on the three convictions, Smith moved to withdraw all of his guilty pleas. He asserted that the pleas were not voluntary, contending that his attorney made "false guarantees" regarding the amount of time Smith

would spend in prison, and that, in any case, he had received ineffective assistance of counsel. His motion was denied.

Sentencing on all counts occurred on June 18, 1992. The sentencing court sentenced Smith to serve 298 months in prison for the second degree murder charge and 63 months in prison for the second degree assault on Davis. These sentences were ordered to be served concurrently. It imposed a 63-month sentence on Smith for the assault on the custodial officer, consecutive to the other two sentences. Smith appealed.

# I

## WITHDRAWAL OF GUILTY PLEAS

Smith contends that the trial court erred in denying his motion to withdraw his guilty pleas. He argues that it would be manifestly unjust to allow the pleas to stand because they were involuntarily made, in that: (1) he was in a state of depression at the time he entered into the pleas; (2) his attorney pressured him with false promises; and (3) he did not understand the nature of the second degree murder charge.[1]

CrR 4.2(f) provides that a court shall allow a defendant to withdraw a guilty plea if it is necessary to "correct a manifest injustice". The Washington Supreme Court has defined "manifest injustice" as "an injustice that is obvious, directly observable, overt, [and] not obscure." *State v. Saas*, 118 Wn.2d 37, 42, 820 P.2d 505 (1991) (quoting *State v. Taylor*, 83 Wn.2d 594, 596, 521 P.2d 699 (1974)). CrR 4.2(f) imposes a demanding standard on a defendant who seeks to withdraw a guilty plea. *Saas*, at 42; *Taylor*, at 596; *In re Ness*, 70 Wn. App. 817, 821, 855 P.2d 1191 (1993), *review denied*, 123 Wn.2d 1009 (1994).

The *Taylor* court set forth four nonexclusive examples of "manifest injustice":

---

[1]Although Smith failed to raise two of these grounds in his motion to the trial court, we have, nevertheless, addressed them. RAP 2.5. Smith's claim to the trial court that he received ineffective assistance of counsel has not been raised on appeal. Thus, we do not address it. RAP 10.3(a)(3), (5).

(1) denial of effective [assistance of] counsel, (2) plea . . . not ratified by the defendant or one authorized [by him or her] to do so, (3) plea was involuntary, (4) plea agreement was not kept by the prosecution.

*Taylor*, at 597.

Smith contends only that his pleas were involuntary, and in support of that contention he cites CrR 4.2(d), which provides in part as follows:

(d) **Voluntariness.** The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea. . . .

## A

Smith first asserts that his plea of guilty to second degree murder was involuntary because he did not have an understanding of the nature of the second degree murder charge. He contends that his lack of understanding of the nature of that charge resulted from the fact that he was not adequately apprised, at the time he entered his plea of guilty, of the state of mind required for second degree murder.

A court may not accept a guilty plea without "determining that it is made with an understanding of the nature of the charge." *Ness*, at 821; *In re Montoya*, 109 Wn.2d 270, 278, 744 P.2d 340 (1987). Indeed, if the accused is not apprised of the nature of the charge, that plea is not, as due process requires that it be, knowing, intelligent, and voluntary. *Henderson v. Morgan*, 426 U.S. 637, 644-45, 49 L. Ed. 2d 108, 96 S. Ct. 2253 (1976); *Montoya*, at 278; *State v. Osborne*, 102 Wn.2d 87, 92-93, 684 P.2d 683 (1984) ("[r]eal notice of the nature of the charge is 'the first and most universally recognized requirement of due process' "). At a minimum, "the defendant would need to be aware of the acts and the *requisite state of mind* in which they must be performed to constitute a crime." (Italics ours.) *In re Keene*, 95 Wn.2d 203, 207, 622 P.2d 360 (1980) (quoting *State v. Holsworth*, 93 Wn.2d 148, 153 n.3, 607 P.2d 845 (1980)); *Montoya*, at 278; *Osborne*, at 93; *Ness*, at 821.

■ Smith was charged with second degree felony murder. RCW 9A.32.050(1)(b). The state of mind that must be shown to prove a felony murder is the same state of mind needed to prove the underlying felony charge. *Osborne*, at 93; *cf. State v. Wanrow*, 91 Wn.2d 301, 311, 588 P.2d 1320 (1978). Here, the underlying felony was second degree assault. Second degree assault can be proved in a number of different ways, but the state of mind that must be proved is *intent* to assault.[2] *See, e.g.*, RCW 9A.36.021(1)(a) ("[i]ntentionally assaults another . . .").

■ In our judgment, the record establishes that Smith was aware that intent was an element of second degree assault and, consequently, second degree murder. First, the amended information informed him that he was charged with second degree felony murder, and that the underlying felony was the crime of assault.[3] Furthermore, Smith's statement on plea of guilty indicated that he was pleading guilty to second degree felony murder. We may consider written statements of the defendant and the charging document when determining if the defendant was informed of the nature of the charge. *Ness*, at 821; *Keene*, at 206-09.

■ Although neither the plea statement nor the amended information contained the word "intent", this deficiency is not determinative. The word assault itself indicates an intentional act. *See State v. Hopper*, 118 Wn.2d 151, 159, 822 P.2d 775 (1992). In *Osborne*, a defendant was charged with second degree felony murder based on an underlying felony of second degree assault. The information, in that case, provided that the defendant "while *committing and attempting to commit the crime of assault* in the second degree . . . did cause the death [of the victim] . . .." *Osborne*, at 94. The *Osborne* court held that

---

[2]Smith contends that the State failed to make him aware of the element of "intent to cause death". Smith's argument is not well taken. The underlying felony was second degree assault. Thus, the State was not required to prove intent to cause death, but, rather, intent to commit an assault.

[3]The amended information provides as follows: "Jayson Thomas Smith . . . did unlawfully and feloniously while committing or attempting to commit the crime of assault in the Second Degree . . . shoot in the head Willie Greenlee . . .".

[i]t is clear from this language that some sort of knowing, purposeful conduct is contemplated. The word "assault" is not commonly understood as referring to an unknowing or accidental act. Likewise, it is difficult to imagine anyone "attempting to commit" an act unknowingly.

*Osborne*, at 94.

Finally, at the hearing at which Smith pleaded guilty to second degree murder, the trial court read a portion of Smith's statement to him. It contained Smith's description of the offense as follows: "I took the gun and went to shoot at [Greenlee's] car and apartment to let him know not to hurt me or my family. I got to his apartment . . . and shot out of my car window from the street toward the car and apartment. . . . I fired again at the apartment and ran." Smith, in response to a question from the trial court, agreed that it was an accurate statement. In our judgment, Smith's description of his conduct discloses that he understood the nature of the assault charge and the fact that it encompassed intentional conduct.

## B

Smith further asserts that his guilty pleas to all three charges were not voluntary because at the time he entered the pleas he was severely depressed and under pressure from counsel to enter the pleas. In that regard, he claims that he: (1) had several psychological disorders and was, therefore, unable to voluntarily enter a guilty plea; and (2) was operating under false assumptions based on erroneous information provided by his attorney regarding the possibility of a change in the law, a pardon by the Governor, and the sale of his artwork, and that these false assumptions resulted in undue pressure to enter guilty pleas.

Although the record contains a report that indicates that Smith was diagnosed with several disorders, it contains no information about how any of these disorders might have interfered with his ability to voluntarily plead guilty. Absent some link between the claimed disorders and Smith's capacity during the plea proceedings, Smith cannot establish that the trial court erred in not permitting him to withdraw his guilty pleas on this ground.

The allegation of pressure from Smith's counsel is also totally unsubstantiated. The attorney who represented Smith when he entered the pleas testified at the hearing on Smith's motion to withdraw his pleas. Her testimony does not support Smith's allegation that false promises were made and/or that pressure was applied. Indeed, the attorney's testimony was not refuted, Smith not having testified. Finally, the incidents regarding the potential pardon by the Governor and the sale of Smith's artwork either are mischaracterized by Smith or are insignificant.

## II

### SENTENCING

Smith contends that the sentencing court erred in imposing the sentence for the assault on the custodial officer consecutive to the sentences for the convictions for second degree murder and the second degree assault on Davis.

The sentencing court imposed the consecutive sentence pursuant to the provisions of RCW 9.94A.400(3),[4] which provides:

> (3) Subject to subsections (1) and (2) of this section, whenever a person is sentenced for a felony that was committed while the person was not under sentence of a felony, the sentence shall run concurrently with any felony sentence which has been imposed by any court in this or another state or by a federal court subsequent to the commission of the crime being sentenced unless the court pronouncing the current sentence expressly orders that they be served consecutively.

If this statute had applied, the trial court should be affirmed. Under RCW 9.94A.400(3), the sentencing court has "total discretion" to impose a consecutive sentence. *State v. Linderman*, 54 Wn. App. 137, 139, 772 P.2d 1025, *review denied*, 113 Wn.2d 1004 (1989); *State v. Huntley*, 45 Wn. App. 658, 662, 726 P.2d 1254 (1986). Indeed, when sentencing under that subsection, the sentencing judge need not set forth any reason for imposing a consecutive sentence, he or she must only "expressly order[ ]" that the sentences be served consecutively.

---

[4]Although RCW 9.94A.400(3) often applies when there is a series of crimes in more than one jurisdiction, that is not always the case. *State v. Moore*, 63 Wn. App. 466, 469, 820 P.2d 59 (1991).

*Linderman,* at 139. Here, there was such an express order for a consecutive sentence.

■ ■ Smith asserts that subsection (1)(a) applied here rather than RCW 9.94A.400(3).[5] The former provides:

> (1)(a) Except as provided in (b) of this subsection, whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions . . .. Sentences imposed under this subsection shall be served concurrently. Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.120 and 9.94A.390(2)(f) or any other provision of RCW 9.94A.390.

RCW 9.94A.400(1)(a). We agree with Smith. Statutory language should be interpreted to effectuate the intent of the Legislature. *State ex rel. Royal v. Board of Yakima Cy. Comm'rs,* 123 Wn.2d 451, 457-58, 869 P.2d 56 (1994). In determining the intent of the Legislature, we first look to the language of the statute. *Yakima Cy.,* at 458. If the language of the statute is plain and unambiguous, we must derive the statute's meaning from the wording of the statute itself. *Yakima Cy.,* at 458; *Service Employees Int'l Union, Local 6 v. Superintendent of Pub. Instruction,* 104 Wn.2d 344, 348, 705 P.2d 776 (1985).

The plain language of RCW 9.94A.400(1)(a) indicates that it applies "whenever a person is to be sentenced for two or more current offenses".[6] Furthermore, RCW 9.94A.360(1) pro-

---

[5]RCW 9.94A.400(3) is expressly subject to subsection (1). If subsection (1) properly applied, then the sentencing court must impose a concurrent sentence unless an exceptional sentence is warranted. RCW 9.94A.400(1)(a).

[6]There is a unique scenario where subsection (1)(a) does not apply even though a defendant is sentenced for multiple current offenses in the same proceeding. In *State v. Moore,* 63 Wn. App. 466, 820 P.2d 59 (1991), Division One held that if a defendant, after conviction, fails to appear for a scheduled sentencing date, then commits and is convicted of another crime, and is sentenced for the original offense and the subsequent offense at the same proceeding, subsection (3) applies. *Moore,* at 470-71. The rationale for this holding is that, by his own actions, the defendant "prevented [the] sentences from being entered when they normally would have been." *Moore,* at 470. Division One opined that concurrent sentences would essentially "reward [the defendant] for evading the punishment for the [initial] convictions." *Moore,* at 471. Division One recognized that its situation differed from one where multiple independent charges were pending against a defendant due to "routine delays in sentencing and are sentenced at the same

vides that "[c]onvictions entered *or sentenced* on the same date as the conviction for which the offender score is being computed shall be deemed 'other current offenses' within the meaning of RCW 9.94A.400." (Italics ours.)

■ Here, Smith was being sentenced on one day for three convictions. Although the guilty pleas were accepted at two separate proceedings, the sentences were handed down at one hearing. At that hearing, the sentencing court computed Smith's offender score for each count by considering the other counts as "other current offenses". Because Smith was being sentenced for two or more current offenses, RCW 9.94A.400(1)(a) applied. The sentence should, therefore, have been concurrent, absent a finding by the sentencing court of grounds for an exceptional sentence.[7]

The State relies on *Huntley* to support its argument that RCW 9.94A.400(3) applies. *Huntley* is distinguishable. In that case, we were interpreting a previous version of RCW 9.94A.400(1), which applied only "whenever a person is *convicted* of two or more offenses". (Italics ours.) *Huntley*, at 660. We observed in *Huntley* that:

> The Legislature by Laws of 1986, ch. 257, § 28, has amended RCW 9.94A.400 by striking reference to the conviction process in subsection (1)(a) and providing for concurrent sentences when a person is sentenced to two or more current offenses . . .. We will not attempt to determine what was the legislative intent as applied to a similar fact pattern as the case before us. That determination must be deferred to another case and time.

*Huntley*, at 662 n.3. We are today presented with such a case and we hold that defendants who are sentenced for multiple

---

hearing." *Moore*, at 470-71. Here, this exception does not apply because there is no evidence that Smith evaded any sentencing date. Indeed, Smith's case is exactly the one that *Moore* opined was not covered by subsection (3), one where multiple independent charges were sentenced in the same hearing without any fault on the defendant in manipulating sentencing dates.

[7]In this case, the sentencing court indicated that it was not imposing an exceptional sentence. The following colloquy occurred during the sentencing hearing:

"MR. JOHNSON: . . . is it my understanding the Court has determined that you do not need to impose an exceptional sentence?

"THE COURT: That is correct."

convictions at the same proceeding must be given concurrent sentences unless the sentencing court determines that there are grounds for an exceptional sentence.[8]

We affirm the denial of the motion to withdraw guilty pleas. We reverse the consecutive sentence and remand for resentencing.

MORGAN, C.J., and SEINFELD, J., concur.

Review denied at 125 Wn. 2d 1017 (1995).

---

[8]In imposing a consecutive sentence in this case, the trial court expressed its concern that if all of the sentences were concurrent, the custodial assault would essentially be a free crime that would be entirely subsumed by the sentence on the murder, and would not result in any accountability. Despite this legitimate concern, the requirements of the statute are clear. On remand the sentencing court can consider whether or not grounds for an exceptional sentence exist.