[Nos. 25908-7-II; 25911-7-II;    Division Two.    November 21, 2001.]
25918-4-II.

THE STATE OF WASHINGTON, *Respondent*, v. ANDREW P.
RASMUSSEN III, *Appellant*.

*Robert M. Quillian* and *Thomas E. Doyle*, for appellant (appointed counsel for appeal).

*H. Steward Menefee, Prosecuting Attorney*, and *Jason S. Richards, Deputy*, for respondent.

QUINN-BRINTNALL, J. — Andrew Rasmussen III was convicted of four criminal counts on three different dates in 1999 and 2000. He was sentenced for all counts on the same day in April 2000, and the trial court imposed consecutive sentences but did not consider whether aggravating circumstances warranted imposition of an exceptional sentence. Rasmussen appeals, claiming that the trial court should have imposed concurrent sentences under RCW 9.94A.400. We agree, vacate and remand for resentencing.

## FACTS

In August 1999, Rasmussen was arrested and charged with attempting to elude a pursuing police vehicle. He pleaded guilty to that charge on October 12, 1999. The State agreed to postpone sentencing until November 15, 1999, and the court released Rasmussen on his own recognizance so that he could "get his family ready for winter." Report of Proceedings (Oct. 12, 1999) at 5. Rasmussen acknowledged that if he violated any of the conditions of the plea agreement, the State would recommend a longer sentence than the sentence agreed to in the plea agreement. One of the conditions of the agreement was that Rasmussen was not allowed to drive.

On November 10, 1999, Rasmussen was arrested for driving with a suspended license. He appeared in Grays Harbor County Superior Court on November 15, 1999, for sentencing on the attempting to elude charge, and he represented to the court that he was not the person driving the vehicle when he was arrested for driving with a suspended license. Sentencing on the attempting to elude charge was set over to December 13, 1999. On November 18, 1999, he pleaded guilty in Aberdeen Municipal Court to first degree driving while license suspended.[1]

On November 30, 1999, Rasmussen was arrested for taking a motor vehicle without owner's permission (TMVWOP), and was charged with that crime on December 1, 1999. Due to this arrest, the court revoked his release on the attempting to elude charge. On December 17, 1999, he pleaded guilty to the TMVWOP charge. Sentencing on that charge was set for February 28, 2000.

In mid-December, Rasmussen wrote a letter to the prosecutor and offered to act as an informant for the Grays Harbor Drug Task Force. In his letter, Rasmussen said, "if I mess up, I would not at all say one word if you ran all my time back to back and give me the maximum you could." Report of Proceedings (Mar. 24, 2000) at 32. Rasmussen, the prosecutor's office, and the Drug Task Force entered into a cooperation agreement[2] on December 15, 1999, under which Rasmussen agreed to provide information to the Drug Task Force in exchange for a lighter sentence recommendation. As part of the cooperation agreement,

---

[1] There are no charging, conviction, or sentencing documents in the record relating to the Aberdeen Municipal Court case, nor any testimony about it. The facts in this paragraph were compiled from the State's response brief, the prosecutor's arguments to the trial court on March 24, 2000, and April 17, 2000, and the Amended Statements of Prosecuting Attorney. The only reference to the Aberdeen case by the defendant is in the Defendant's Sentencing Memorandum as follows: "On November 10, 1999, Mr. Rasmussen was arrested for DWLS (driving while license suspended) 1st but was granted more time to resolve, that matter in the Municipal Court for the city of Aberdeen." 1 Clerk's Papers at 32.

[2] Rasmussen's letter and the cooperation agreement were admitted as evidence at the March 24, 2000 hearing, but they are not in the record before this court.

Rasmussen agreed to comply with several conditions, including maintaining weekly contact with the Drug Task Force. Rasmussen failed to contact the Drug Task Force as required, and he failed to comply with several other conditions of the cooperation agreement. The State moved on January 6, 2000, to have his pretrial release revoked for noncompliance with the terms and conditions and the court issued a bench warrant for his arrest that same day.

On February 16, 2000, Rasmussen was again arrested for a traffic infraction. Following his arrest, police found methamphetamine and a forged check in his possession. Rasmussen also had track marks on his arm and he admitted that he had been injecting himself with methamphetamine. On February 25, 2000, he was charged with forgery and unlawful possession of methamphetamine. He pleaded guilty to these two charges on March 27, 2000.

The trial court sentenced Rasmussen on all three cause numbers on April 17, 2000.[3] The trial court imposed consecutive 25-month sentences for attempting to elude and TMVWOP. The court also imposed a DOSA[4] sentence of 12 and three-quarter months[5] for VUCSA[6] and forgery, to run consecutively to the other two sentences. The court did not impose an exceptional sentence under RCW 9.94A.120(2).

Rasmussen argues that because he was sentenced to all crimes charged on the same day the court was required to order the sentences to be served concurrently.

---

[3] The cover of the Report of Proceedings of the sentencing hearing erroneously indicates the date as April 7, 2000, and both parties' briefs refer to April 7 as the sentencing date. But a review of the documents confirms that April 17, 2000, was the actual sentencing date.

[4] Drug Offender Sentencing Alternative. *See* RCW 9.94A.120(6).

[5] The Judgment and Sentence indicates a sentence of 12 and three-quarter months, but everyone at the sentencing hearing, including the judge, referred to 12 and one-half months. This discrepancy does not affect this court's analysis.

[6] Violation of the Uniform Controlled Substances Act—Possession of Methamphetamine. *See* RCW 69.50.401(d).

## ANALYSIS

██ As a threshold issue, it should be noted that Rasmussen did not object to the imposition of consecutive sentences until he filed his Notice of Appeal with this court. Generally, this court will not address an issue that was not raised at trial. RAP 2.5(a). But this court may address for the first time on appeal the imposition of a criminal penalty that is not in compliance with sentencing statutes. *State v. Moen*, 129 Wn.2d 535, 543-48, 919 P.2d 69 (1996).

██ Absent an exceptional sentence, sentences for current offenses are to be served concurrently.[7] RCW 9.94A.-400(1)(a).[8]

But RCW 9.94A.400(3) provides:

> Subject to subsections (1) and (2) of this section, whenever a person is sentenced for a felony that was committed while the person was not under sentence of a felony, the sentence shall run concurrently with any felony sentence which has been imposed by any court in this or another state or by a federal court subsequent to the commission of the crime being sentenced unless the court pronouncing the current sentence expressly orders that they be served consecutively.

On advice of the prosecuting attorney, the trial court believed that RCW 9.94A.400(3) applied and gave it the discretion to impose consecutive sentences without finding an exceptional sentence. Thus, the court pronounced sentence and expressly ordered that the terms be served consecutively.

Rasmussen claims that RCW 9.94A.400(1)(a) and not RCW 9.94A.400(3) controls his sentencing because the three offenses for which the court sentenced him were "current offenses" as provided in RCW 9.94A.360(1):

---

[7] Other exceptions are provided in RCW 9.94A.400(1)(b), (1)(c), and (2), but those exceptions also do not apply in this case.

[8] We note that the trial court must apply the sentencing laws in effect on the dates Rasmussen committed the crimes. RCW 9.94A.345 ("[a]ny sentence imposed under this chapter shall be determined in accordance with the law in effect when the current offense was committed"). Therefore, this opinion refers to the sentencing statutes in effect from August 1999 through February 2000.

A prior conviction is a conviction which exists before the date of sentencing for the offense for which the offender score is being computed. Convictions entered or sentenced on the same date as the conviction for which the offender score is being computed shall be deemed "other current offenses" within the meaning of RCW 9.94A.400.

RCW 9.94A.360(1).

We agree. Rasmussen correctly argues that the principal holding in *State v. Smith*, 74 Wn. App. 844, 875 P.2d 1249 (1994), *review denied*, 125 Wn.2d 1017 (1995), supports his position. In *Smith*, the defendant pleaded guilty to three offenses at two separate proceedings, but he was sentenced for all three convictions at the same time. This court reversed the trial court's imposition of consecutive sentences and remanded for resentencing, holding that RCW 9.94A.400(1)(a) applied and that subsection (3) did not. *Smith*, 74 Wn. App. at 852-53.

The State argues that *Smith* also identifies "a unique scenario where subsection (1)(a) does not apply even though a defendant is sentenced for multiple current offenses in the same proceeding." *Smith*, 74 Wn. App. at 852 n.6.

That scenario is the one described in *State v. Moore*, 63 Wn. App. 466, 820 P.2d 59 (1991). In *Moore*, the defendant was convicted of two offenses in 1987 but failed to appear for the scheduled sentencing hearing for those convictions. In 1990, he committed and was convicted of another offense. He was sentenced for all three offenses at the same proceeding. Division One of this court held that the trial court properly applied RCW 9.94A.400(3) and ordered that the sentence for the 1990 offense run consecutively to the sentence for the 1987 offenses. *Moore*, 63 Wn. App. at 469-71.

The *Moore* court held that the defendant's misconduct prevented the court from sentencing him for the 1987 convictions when it normally would have. *Moore*, 63 Wn. App. at 470. The court also held that to order the sentence for the 1990 conviction to run concurrently with the sentences for the 1987 convictions "would in effect reward [the

defendant] for evading the punishment for the [1987] convictions." *Moore*, 63 Wn. App. at 471.

The situation in *Moore* is distinguishable from "one in which multiple independent charges . . . are pending against a defendant due to routine delays in sentencing and are sentenced at the same hearing." *Moore*, 63 Wn. App. at 470-71. In *Smith*, the court held that the *Moore* exception did not apply "because there [was] no evidence that Smith evaded any sentencing date." *Smith*, 74 Wn. App. at 853 n.6.[9] Here, Rasmussen did not evade justice as Moore did.

Rasmussen expressly asked the court's permission to delay sentencing so he could "get his family ready for winter." Report of Proceedings (Oct. 12, 1999) at 5.[10] Later, he requested a continuance, claiming misidentification in connection with the Aberdeen Municipal Court charge of driving with a suspended license.[11] The trial court granted Rasmussen's requests and continued sentencing again, this time to December 13, 1999.

Again Rasmussen worked through the system. While awaiting sentencing on the attempting to elude charge and the TMVWOP charge, Rasmussen offered to act as an informant for the Drug Task Force. He entered into a contract to provide services for the State, and the court delayed sentencing on the two charges until February 28, 2000.[12] He never fulfilled any of the services he promised to the State.

---

[9] The court in *Smith* further opined that the *Moore* exception would not apply "where multiple independent charges were sentenced in the same hearing without any fault on the defendant in manipulating sentencing dates." *Smith*, 74 Wn. App. at 853 n.6.

[10] At the sentencing hearing on April 17, 2000, the prosecutor indicated that he had spoken with Rasmussen's stepmother, who told him that Rasmussen "had not lifted one finger, had not done anything to [get] ready for winter, was just out partying with his buddies." Report of Proceedings (Apr. 17, 2000) at 7.

[11] He represented to the court that it was all a mistake and that he would prove in court that he was not the person driving the vehicle.

[12] The trial court did not specify that it was delaying the sentencing date because of the cooperation agreement. However, the cooperation agreement required Rasmussen to perform several duties for the State within 60 days of the

Although this court does not endorse Rasmussen's actions, he obtained each continuance with the trial court's approval. He never absconded the court's jurisdiction or failed to appear at court-ordered hearings. Thus, this is not the "unique scenario" that *Smith* refers to as one where RCW 9.94A.400(1)(a) does not apply. *See Smith*, 74 Wn. App. at 852 n.6.

Rasmussen's conduct did not unilaterally cause the delays in sentencing, and neither *Moore* nor RCW 9.94A.-400(3) apply. RCW 9.94A.400(1)(a) controls and requires that a court make finding of aggravating circumstances warranting imposition of an exceptional sentence before sentences imposed on the same day may be served consecutively if appropriate.

We vacate and remand to the trial court for resentencing in accord with this opinion.

ARMSTRONG, C.J., and BRIDGEWATER, J., concur.

agreement. Under the cooperation agreement, if Rasmussen did not fulfill his duties, the State would ask for the highest possible sentence within the standard range for the two offenses to which he had pleaded guilty. This court can infer that the trial court delayed sentencing due to the cooperation agreement.