**FILED**
**JULY 2, 2020**
In the Office of the Clerk of Court
WA State Court of Appeals Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36946-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MATTHEW S. MCNEIL, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — During the same sentencing hearing, the superior court sentenced Matthew McNeil for three crimes prosecuted in three distinct proceedings. The sentencing court imposed consecutive sentences for the three crimes. Because the court did not enter a written finding of fact supporting an exceptional sentence, we, based on RCW 9.94A.589(1), vacate the sentences and remand for resentencing.

FACTS

This appeal is one of three unconsolidated appeals concerning the sentencing in one day of Matthew McNeil for three crimes. This appeal concerns the charge of conspiracy to possess a controlled substance, the third crime in chronological order.

Each appeal presents the same question of whether the sentencing court could impose consecutive sentences for the three offenses.

On June 21, 2017, the State of Washington charged Matthew McNeil with one count of attempting to elude a police vehicle and one count of possessing a dangerous weapon. The charges stem from McNeil's riding of a motorcycle on June 12, 2017. When apprehended, McNeil possessed a switchblade knife. On February 28, 2018, the State charged McNeil with attempting to elude a police vehicle stemming from a February 23, 2018 flight from a law enforcement officer.

The State of Washington and Matthew McNeil agreed to McNeil pleading guilty to both counts of attempting to elude a police vehicle. The State agreed to recommend to the sentencing court a prison-based drug offender sentencing alternative (DOSA) to include 12.75 months in custody and 12.75 months on community custody, with both sentences to run concurrently. The State also agreed to dismiss the dangerous weapon violation charge associated with the June 12, 2017 apprehension.

On September 5, 2018, Matthew McNeil pled guilty to the two distinct counts of attempting to elude a police vehicle. McNeil requested the court to continue his sentencing hearing for at least twelve weeks, so that he could participate in a parenting skills class, relationship class, and drug and alcohol treatment offered at the Geiger Correctional Center. The trial court granted his request and scheduled the sentencing

2

hearing for January 2, 2019. The court later postponed the hearing until February 27, 2019. We do not know the reason for this second continuance.

While in custody awaiting sentencing on the two charges, Matthew McNeil and Emily Hammond agreed to smuggle controlled substances into the Geiger Correctional Facility. On February 26, 2019, Spokane County Detention Services listened to recorded telephone conversations between McNeil and Hammond, during which conversations McNeil asked Hammond to covertly mail him Suboxone. Later that day, a property custodian intercepted a letter addressed to McNeil and, after a diligent search, found clear strips secreted in the back seams of the envelope. The strips later tested positive for Suboxone.

Another recorded conversation caught Matthew McNeil requesting Emily Hammond to arrive early to court the next day, February 27, 2019, to attend McNeil's sentencing hearing from his previous two pleas. McNeil directed her to hide contraband in the bench cushion, on which he would sit, and to mark the area with a squirt of ketchup so that McNeil could locate the substance, conceal it within his body, and smuggle it into the correctional facility. After law enforcement discovered the plot, the superior court continued the February 27 sentencing hearing until May 30.

PROCEDURE

On April 3, 2019, the State of Washington charged Matthew McNeil with possession of a controlled substance with intent to deliver and delivery of a controlled

substance.

At the sentencing hearing, on May 30, 2019, for the crimes of attempting to elude a law enforcement officer, the State disclosed that, although sentencing had been continued before, the parties were attempting to reach a global resolution for all pending charges, and the State awaited confirmation that one of the substances sent by Emily Hammond tested positive as Suboxone. At the request of the State, the court continued the hearing to July 3, 2019, but declared that, if the parties had not reached a global settlement by July 3, the court would then impose a sentence on the two counts of eluding.

Before July 3, 2019, the parties reached a global resolution which included Matthew McNeil pleading guilty to one count of conspiracy to deliver a controlled substance to resolve the new charges. On July 3, 2019, the State amended the information in this case to charge one count of conspiracy to commit delivery of a controlled substance. McNeil pled guilty to the charge. With the plea, McNeil had a 9+ offender score and faced a standard range sentence of twenty-two to twenty-nine months for each of the attempting to elude offenses and zero to twelve months for the controlled substance offense. McNeil had twenty-one earlier felony convictions.

The superior court proceeded with sentencing for all three offenses on July 3, 2019. At the sentencing hearing, the State informed the court of a joint sentencing recommendation, in which the State and McNeil agreed to request a prison-based,

4

concurrent DOSA sentence of 12.75 months in custody and another 12.75 months on community supervision for the attempting to elude offenses. For the conspiracy to deliver a controlled substance charge, the parties recommended six months of confinement, consecutive to the DOSA sentence. McNeil's trial counsel, during the hearing, acknowledged the joint recommendation for sentencing.

During the sentencing hearing, the sentencing court asked Matthew McNeil whether he had participated in a DOSA sentence before and if he had successfully completed the sentence. McNeil responded:

> I was—kind of. It was—they —I went through in Airway Heights and it was kind of like a . . . training class that they did. I completed the class, but it wasn't—like, the facilitator wasn't really . . . kind of hard to explain. But, like, my group that went in there was the first group that they kind of allowed some money that got us in there. We got a four-month class for the group. And the facilitator wasn't really qualified for the job. And so I completed his class, but it wasn't really a treatment-based class.

Report of Proceedings (RP) at 29.

During his oral ruing at the conclusion of the sentencing hearing, the sentencing court weighed the joint recommendation with Matthew McNeil's lengthy criminal history, the purposes of rehabilitation, and the facts behind McNeil's three current convictions. RP 30-32. Thereafter, the court declined to follow the joint recommendation. The court commented:

> Here you have two counts of attempting to elude . . .
> . . . .

On each of those two cases, the Court's required to impose a sentence, for the most part, between 22 to 29 months unless the Court gives you a Drug Offender Sentencing Alternative. But based upon your offender score, the Court can also go above that and impose an exceptional sentence because your offender score is so far beyond the maximum of nine and a crime would be unpunished if the Court were to run these concurrent.

With all that said, I firmly believe in rehabilitation. I think that if you were to get your drug addiction under control it would probably help everything. But at the same time, for 27 years people have been trying to assist you in resolving your problem. And it's one thing to get a possession charge. It's another thing to be going a hundred miles an hour down Country Homes while running from the police and then run from the police a second time and almost strike a patrol vehicle.

So as much as I respect the recommendation here, it seems that, first, one charge will go unpunished, at least one if the Court follows the recommendation. Secondly, I'd rather use our resources of the DOSA program on someone who might benefit from that. It [sic] think after 27 years, I hate to say it, but I'm more or less giving up and thinking maybe just incarceration will resolve the problem.

RP at 31-32.

The trial court sentenced Matthew McNeil to twenty-nine months for each count of attempting to elude and twelve months for the conspiracy to possess a controlled substance charge. The sentencing court ordered McNeil to serve each sentence consecutive to the others, for a total of seventy months. In the judgment and sentence, the sentencing court made no entry imposing an exceptional sentence.

LAW AND ANALYSIS

The only questions on appeal surround the consecutive sentences imposed on Matthew McNeil. McNeil contends that the sentencing court lacked authority to sentence him to consecutive sentences under RCW 9.94A.589. McNeil requests that his sentence

6

be vacated and the case be remanded for resentencing. The State responds that the current offenses provision of RCW 9.94A.589(1)(a) does not apply under the unique facts of this case, such that concurrent sentences under these circumstances would lead to an absurd result. The State also asks that we affirm the consecutive sentences on the basis of equitable principles and the invited error doctrine.

*Issue 1: Whether the sentencing court possessed authority to impose consecutive sentences for the three crimes, despite sentencing occurring on the same day, because of the delay in the sentencing of the two attempting to elude offenses?*

*Answer 1: No.*

RCW 9.94A.589 controls the question of whether the sentencing court may impose concurrent sentences or consecutive sentences. The statute declares, in relevant part:

> (1)(a) Except as provided in (b), (c), or (d) of this subsection, whenever a person is to be sentenced for *two or more current offenses*, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. *Sentences imposed under this subsection shall be served concurrently. Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.535.*

RCW 9.94A.589 presents the general rule that "current offenses" shall be sentenced concurrently. Another section of the sentencing reform act defines "current offense" as:

7

Convictions entered or sentenced on the same date as the conviction for which the offender score is being computed shall be deemed "other current offenses" within the meaning of RCW 9.94A.589.

RCW 9.94A.525(1). Thus, sentences imposed on the same day must be sentenced concurrently, unless sentenced under the exceptional sentence provisions of RCW 9.94A.535. *In re Personal Restraint of Finstad*, 177 Wn.2d 501, 507, 301 P.3d 450 (2013).

RCW 9.94A.535 allows the sentencing court to enter an exceptional sentence, including consecutive sentences for crimes sentenced on the same day, under numerous circumstances. One circumstances is when "the defendant committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." RCW 9.94A.535(2)(c). For the court to impose an exceptional sentence, the court must "set forth the reasons for its decision in written findings of fact and conclusions of law." RCW 9.94A.535. A written finding is essential. *State v. Friedlund*, 182 Wn.2d 388, 341 P.3d 280 (2015). No court has addressed whether a corresponding written conclusion of law is essential.

Matthew McNeil's sentencing court court mentioned, during the hearing, that he could impose an exceptional sentence on McNeil because of McNeil's excessive offender score. But the court did not declare that he would impose an exceptional sentence, nor did the court enter any finding or conclusion of law favoring or approving an exceptional sentence.

Matthew McNeil's sentencing court sentenced McNeil on the same day for one conviction of conspiracy to possess a controlled substance and two convictions for attempting to elude a police vehicle. Accordingly, McNeil insists that the superior court could not impose consecutive sentences without declaring an exceptional sentence. In turn, the State asks that we apply an exception to RCW 9.94A.589(1)(a) that applies when the unique circumstances or facts of a case demonstrate that the offenses are not truly current offenses within the meaning of RCW 9.94A.525(1). The State complains that McNeil attempts to profit from the delay in sentencing him for attempting to elude because he sought delivery of controlled substances in the meantime.

The State cites *State v. Moore*, 63 Wn. App. 466, 820 P.2d 59 (1991) for its argument that the trial court was not bound by the language of RCW 9.94A.589(1)(a) because of the unique circumstances of McNeil's sentencing. Jeffrey Evans, one of several defendants in *State v. Moore*, was convicted of two offenses in 1987 but failed to appear for the scheduled sentencing hearing for those convictions. In 1990, the trial court convicted Evans for an unrelated assault charge. The court sentenced him on all three offenses at the same proceeding, ordered concurrent sentences for the first two convictions, but ran them consecutive to the assault conviction. The court did not specify any basis for an exceptional sentence.

On appeal, in *State v. Moore*, Jeff Evans argued that former RCW 9.94A.400, which contained language similar to the current RCW 9.94A.589, required concurrent

9

sentences absent written findings that supported an exceptional sentence. Because of the

unique circumstances, this court disagreed:

> Evans absconded to avoid sentencing on the 1987 convictions. By doing so, he prevented those sentences from being entered when they normally would have been. This situation differs, consequently, from one in which multiple independent charges in a single jurisdiction are pending against a defendant due to routine delays in sentencing and are sentenced at the same hearing. To order the 9–month sentence for the assault conviction to run concurrently with the 18–month burglary sentences would in effect reward Evans for evading the punishment for the burglary convictions.

*State v. Moore*, 63 Wn. App. at 470-71 (footnote omitted).

The State characterizes the delays in Matthew McNeil's sentencing for his two

attempts to elude a law enforcement officer as nonroutine. The State asserts that McNeil

manipulated a delay in his sentencing from the initial date of September 5, 2018. We

disagree with the State's factual assertions. The record demonstrates that the

continuances for McNeil's sentencing were routine. The State did not object to McNeil's

first request to continue sentencing so that he could enter a drug rehabilitation program in

the jail. The trial court granted the continuance and scheduled his sentencing hearing for

January 2019. The State itself sought an additional delay in sentencing so that it could

reach a resolution of all pending charges.

We juxtapose *State v. Moore* with *State v. Smith*, 74 Wn. App. 844, 875 P.2d 1249

(1994) and *State v. Rasmussen*, 109 Wn. App. 279, 34 P.3d 1235 (2001). In *Smith*,

Jayson Smith pled guilty to second degree assault and second degree murder. While

awaiting sentencing, Smith attacked a prison official, and the State charged him with another count of second degree assault. This court rejected the State's request to impose, without a declaration of an exceptional sentence, consecutive sentences for the three crimes. This court held that the *Moore* exception to former RCW 9.94A.400 (1)(a) did not apply to a lack of evidence that the accused evaded a sentencing date.

In *State v. Rasmussen*, this court narrowly interpreted the *Moore* exception. The sentencing court granted Andrew Rasmussen's several requests for continuances while he awaited sentencing on various charges. Rasmussen asked for the postponements to assist his family in preparing for the winter, to resolve a claim of misidentification in connection with a charge of driving with a suspended license, and to facilitate his becoming an informant for the State. Rasmussen, however, never fulfilled any of the services he promised to the State. Though this court did not endorse Rasmussen's actions, the court stated that the exception carved out in *Moore* did not apply because Rasmussen obtained each continuance with the trial court's approval. Rasmussen never absconded the court's jurisdiction, nor did he fail to appear at his court-ordered hearings.

*Issue 2: Whether principles of equity should lead this court to affirm the consecutive sentences?*

*Answer 2: No.*

The State asks this court to apply principles of equity and affirm the sentences imposed on Matthew McNeil. The only case cited by the State in support of this equity

11

argument is *Income Investors, Inc. v. Shelton*, 3 Wn.2d 599, 602, 101 P.2d 973 (1940). This decision repeats the standard maxim that a person who comes into an equity court must come with clean hands.

The State cites no law that declares a criminal court to be a court of equity. This court will not review a claimed error unless it is supported by citation to legal authority. *BC Tire Corp. v. GTE Directories Corp.*, 46 Wn. App. 351, 355, 730 P.2d 726 (1986). Although we do not deem a criminal court to sit in equity, we deem *State v. Moore* to be based on principles of fairness, if not unclean hands of Jeff Evans. We decline to extend the ruling in *Moore* beyond its facts.

*Issue 3: Whether this court should decline application of RCW 9.94A.589(1) because Matthew McNeil invited error?*

*Answer 3: No.*

The State next argues that Matthew McNeil invited the imposition of an exceptional consecutive sentence for his controlled substance conviction because McNeil agreed in the joint recommendation's provision to the sentence. We disagree. Even when a defendant invited the challenged sentence by participating in a plea agreement, if the sentencing court exceeded its statutory authority, the invited error doctrine will not preclude appellate review. *State v. Mercado*, 181 Wn. App. 624, 631, 326 P.3d 154 (2014).

The State cites *In re Personal Restraint of Breedlove*, 138 Wn.2d 298, 300, 979 P.2d 417 (1999) for the proposition that the defendant's agreement to an exceptional sentence presents a substantial and compelling reason for an exceptional sentence. RCW 9.94A.535(2)(a) codifies this principle. We do not dispute this rule, but Matthew McNeil never agreed to an exceptional sentence. More importantly, McNeil's sentencing court never found in favor of an exceptional sentence.

*Issue 4: What remedy should this court issue as a result of the erroneous consecutive sentences?*

*Answer 4: We remand to the superior court for resentencing.*

The trial court observed, in its oral ruling, that McNeil's high offender score could result in an offense going unpunished, and that the court had authority to impose an exceptional sentence. Because of these comments, the State asks us to remand to the sentencing court for the sole purpose of entry of a finding of fact that the grant of concurrent sentences would allow McNeil to go unpunished for one or two of his new crimes.

Matthew McNeil contends that his sentence must be vacated and remanded for resentencing. He does not expressly seek to preclude the superior court, during resentencing, from entering a written finding of fact that would validate an exceptional sentence or consecutive sentences. We assume that the State desires this court to merely direct the court to enter a written finding that the free crimes aggravator applies, while

13

McNeil wants the superior court to exercise discretion during an entirely new hearing as to what sentence to impose, including whether to run the sentences for two or more offenses consecutively.

The State relies on *State v. Friedlund*, 182 Wn.2d 388, 341 P.3d 280 (2015). In *Friedlund*, the trial court sentenced John Friedlund to 120 months in prison, above the standard range sentence of three to nine months. The trial court explained its reasons for imposing an exceptional sentence on the record at sentencing. But when the court signed the judgment and sentence, no written findings were entered. Thereafter, the superior court retroactively entered appropriate findings. The *Friedlund* court held that the remedy for a trial court's failure to enter written findings of fact and conclusions of law is to remand the case for entry of those findings and conclusions. *State v. Friedlund*, 182 Wn.2d at 395.

Matthew McNeil contends *State v. Rasmussen*, 109 Wn. App. 279 (2001) provides the proper remedy for his case. Andrew Rasmussen was convicted of four crimes committed on three different dates. The superior court sentenced all counts on the same day, and the trial court imposed consecutive sentences, but the trial court did not did not consider whether aggravating circumstances warranted imposition of an exceptional sentence. The *Rasmussen* court vacated the sentence and remanded the case for resentencing.

14

We deem *State v. Rasmussen*, not *State v. Friedlund*, analogous. Matthew McNeil's sentencing court discussed grounds for the imposition of an exceptional sentence, but did not expressly state that he wished to enter an exceptional sentence. Thus, a full rehearing is due.

## CONCLUSION

We remand for the sentencing court to perform resentencing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, C.J.