## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52812-6-II |
| Respondent, | |
| v. | |
| SHARON ELAINE CARSON, | |
| Appellant. | |
| | No. 52689-1-II |
| In the Matter of the Personal Restraint of | |
| SHARON ELAINE CARSON, | UNPUBLISHED OPINION |
| Petitioner. | |

GLASGOW, J.—The Grays Harbor County Drug Task Force used a confidential informant to complete three controlled buys of methamphetamine from Sharon Elaine Carson at her house. Carson was convicted of three counts of delivering methamphetamine and one count of unlawful use of a building for drug purposes. Carson appeals her sentence. She argues that the trial court erred by imposing school bus stop sentence enhancements consecutively to each other without adopting findings and conclusions necessary for an exceptional sentence. Carson also challenges the imposition of the DNA collection fee.

We agree that the trial court erred by imposing the school bus stop sentence enhancements consecutively to each other without identifying a basis for an exceptional sentence and without entering findings of fact and conclusions of law. We vacate the consecutive imposition of the

school bus stop sentence enhancements and remand for the trial court to determine if an exceptional sentence imposing the enhancements consecutively to each other is appropriate under RCW 9.94A.535. We also remand for the trial court to reconsider the DNA collection fee.

Before trial, Carson filed a pro se personal restraint petition (PRP) that was later consolidated with her direct appeal. The issues related to probable cause raised in Carson's PRP are moot, and we otherwise deny the PRP.

FACTS

Detectives Chris Rathbun, Richard Ramirez, and Joe Strong, who worked with the Grays Harbor County Drug Task Force, orchestrated three controlled buys of methamphetamine from Carson at her house in Aberdeen, Washington, using a confidential informant.

The detectives then obtained a warrant and searched Carson's house. In Carson's bedroom, the detectives found an uncapped syringe containing a brown liquid they believed was heroin and two pipes for smoking methamphetamine. The detectives photographed the syringe and its contents. They then disposed of the syringe and the liquid because they did not know what it contained and did not have a container for safely transporting a needle.

The State then requested and obtained a warrant for Carson's arrest based on probable cause established with the evidence they obtained from the controlled buys and the search of her home. In a second amended information, Carson was charged with one count of possession of heroin based on the evidence found in the search, and three counts of delivering methamphetamine based on the three controlled buys. Carson pleaded not guilty.

Carson's initial trial counsel moved to withdraw because counsel discovered that the confidential informant in Carson's case was also a client. The trial court granted the motion and

appointed new counsel. The State offered Carson a plea deal under which she would plead guilty to two counts of delivering a controlled substance and the State would recommend a 14-month sentence.

Carson did not take the plea offer. The State filed a third amended information, dropping the possession of heroin charge, and adding one count of unlawful use of a building for drug purposes. The State also added school bus stop sentence enhancements to each of the three counts of delivery of methamphetamine.

Carson's new trial counsel moved to withdraw three times before trial, claiming breakdown of the attorney-client relationship. Carson expressed frustration with her attorney but told the trial court she believed they were able to communicate adequately. The trial court denied each of defense counsel's motions, finding no cause for withdrawal.

A few days before trial, Carson filed a pro se personal restraint petition (PRP) in the Washington Supreme Court. Carson sought pretrial release, arguing that her "speedy trial rights" had been violated, evidence establishing probable cause to hold her in custody had been disposed of, she was deprived of her right to a preliminary hearing to establish probable cause, she had not received a CrR 3.5 hearing, her counsel was ineffective, and other constitutional violations occurred. PRP at 3.

A jury trial began on November 27, 2018. The jury convicted Carson of all counts. The jury found by special verdict that each of the three methamphetamine sales occurred within 1,000 feet of a school bus stop.

In its sentencing memorandum and at the sentencing hearing, the State recommended 60 months for each of the delivery of methamphetamine convictions (counts 1-3) and 18 months for

the unlawful use of a building for drug purposes conviction (count 4). The State argued that the trial court had to impose each of the three 24-month school bus stop sentence enhancements "consecutive to each other and to all other sentencing provisions, pursuant to RCW 9.94A.533(6)." Clerk's Papers at 209. In total, the State recommended a 132-month sentence.

Without describing its recommendation as an exceptional sentence, the State argued that a 132-month total sentence was appropriate because Carson's house had been the subject of numerous complaints about criminal activity, and Carson made phone calls from jail instructing family members to reveal the confidential informant's identity.

Carson countered that mitigating factors applied, including that she was a 58-year-old grandmother and family caretaker with health issues, she had no recent drug related convictions, and she sold only small quantities of drugs. Carson argued that due to these mitigating factors, "an exceptional sentence downward should apply to the school [bus stop] enhancement[s]." Verbatim Report of Proceedings (Dec. 7, 2018) at 340-41.

Neither the State nor the defense mentioned an exceptional sentence upward. Contrary to the State's argument on appeal, both parties and the trial court appeared to assume that the school bus stop sentence enhancements had to run consecutively to each other unless mitigating factors applied. Although Carson's trial counsel argued that the school bus stop enhancements should be imposed concurrently rather than consecutively to each other, his reasoning was that mitigating factors supported an exceptional sentence *downward*.

The trial court sentenced Carson to 48 months each on counts 1-3 and 18 months on count 4. The judgment and sentence indicates that the base sentences for counts 1-4 were to be served concurrently. The trial court added 24-month school bus stop sentence enhancements to each of

the three delivery of methamphetamine counts, ordering that the enhancements were to be served consecutively. The trial court did not specify in its oral ruling or in the judgment and sentence that it was ordering the enhancements to be served consecutively to each other, but this was the effect because the actual number of months of total confinement ordered in the judgment and sentence was 120 months.

The trial court did not check the box in the judgment and sentence indicating it was imposing an exceptional sentence, nor did it enter written findings of fact and conclusions of law supporting an exceptional sentence.

No evidence was presented to the trial court about whether Carson had previously paid the $100 DNA collection fee. The trial court waived some legal financial obligations due to Carson's indigency but imposed the DNA collection fee.

Carson appeals the imposition of the three school bus stop sentence enhancements consecutively to each other and the imposition of the DNA collection fee. The Supreme Court transferred Carson's PRP to this court, and we consolidated the PRP with this direct appeal.

ANALYSIS

I. DIRECT APPEAL

A.     School Bus Stop Sentence Enhancements

Carson argues that the trial court erred when it imposed the school bus stop sentence enhancements consecutively to each other. Carson argues that under RCW 9.94A.533(6), RCW 9.94A.589(1)(a), and *State v. Conover*, 183 Wn.2d 706, 708, 355 P.3d 1093 (2015), the trial court could only have imposed the school bus stop sentence enhancements consecutively to each other if it imposed an exceptional sentence under RCW 9.94A.535. Carson contends there is no evidence

the trial court ordered an exceptional sentence under RCW 9.94A.535, so it erred by running the three school bus stop sentence enhancements consecutively to each other. We agree.

### 1.    Exceptional sentence requirements

Under RCW 69.50.435(1)(c), a person who sells drugs within 1,000 feet of a school bus stop may be subject to an additional penalty in addition to the sentence otherwise authorized by chapter 69.50 RCW, the Uniform Controlled Substances Act. RCW 9.94A.533(6) requires that school bus stop sentence enhancements run consecutively to "all other sentencing provisions," but the Washington Supreme Court has held that this statute does not *require* trial courts to impose multiple school bus stop sentence enhancements consecutively to *each other*. In *Conover*, the court held, "RCW 9.94A.533(6) does *not* require trial courts to run school bus route stop enhancements on different counts consecutively to each other; instead . . . whether those enhancements are to run concurrently or consecutively is . . . determined by resort to the rules in RCW 9.94A.589(1)(a)." 183 Wn.2d at 708.

Under RCW 9.94A.589(1)(a), sentences for offenses other than serious violent offenses "shall be served concurrently" and "[c]onsecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.535." RCW 9.94A.535(2) provides an exclusive list of aggravating circumstances that the trial court can find to support an exceptional sentence, while RCW 9.94A.535(3) provides an exclusive list of factors that must be found by a jury to support an exceptional sentence. "Whenever a sentence outside the standard sentence range is imposed, the court shall set forth the reasons for its decision in written findings of fact and conclusions of law." RCW 9.94A.535; *see also State v. Friedlund,* 182 Wn.2d 388, 393, 341 P.3d

280 (2015) ("the entry of written findings is essential when a court imposes an exceptional sentence").

"Sentencing errors resulting in unlawful sentences may be raised for the first time on appeal." *State v. Dunleavy*, 2 Wn. App. 2d 420, 432, 409 P.3d 1077 (2018). Appellate courts "review de novo whether a trial court's reasons for imposing an exceptional sentence meet the requirements of the [Sentencing Reform Act of 1981, chapter 9.94A. RCW, (SRA)]." *Friedlund*, 182 Wn.2d at 393-94 (applying de novo review to trial court's failure to enter written findings of fact and conclusions of law in support of an exceptional sentence).

Here, there is no dispute that although the jury found the crime was committed within 1,000 feet of a school bus stop, which supported the sentencing enhancement, the State did not charge and the jury did not find any aggravating circumstance listed in RCW 9.94A.535(3) to support an exceptional sentence. Nor did the trial court enter written findings of fact and conclusions of law to support an exceptional sentence in this case. The trial court did not discuss sentencing Carson to an exceptional sentence at the sentencing hearing. And the portion of the judgment and sentence indicating the imposition of an exceptional sentence was blank.

The only discussion of departing from the standard range occurred when Carson's counsel argued that the school bus stop sentence enhancements should be sentenced concurrently rather than consecutively to each other because mitigating factors supported a *downward* departure from the standard range. The State discussed the jury's special verdict finding that Carson sold methamphetamine within 1,000 feet of a school bus stop at the sentencing hearing, but this special verdict alone did not support the imposition of the enhancements consecutively *to each other*.

To the extent the State argues that the trial court's sentence was proper because it satisfied the three-pronged test for an exceptional sentence articulated in *State v. Davis*, we reject that argument. 146 Wn. App. 714, 720, 192 P.3d 29 (2008). The *Davis* test does not apply here because the trial court never indicated an intent to impose an exceptional sentence and made no findings about how an exceptional sentence would be justified under RCW 9.94A.535.

Similarly, we reject the State's argument that the trial court properly sentenced Carson to consecutive school bus stop enhancements because the sentence serves the purposes of the SRA. The sentence was higher than the standard range, and the SRA explicitly requires that "[w]henever a sentence outside the standard sentence range is imposed, the court shall set forth the reasons for its decision in written findings of fact and conclusions of law." RCW 9.94A.535. The trial court's sentence thus did not meet the procedural requirements of the SRA nor did the trial court even state a basis for an exceptional sentence under the statute. *Friedlund*, 182 Wn.2d at 393.

We hold that under *Conover* and *Friedlund*, the trial court erred by imposing the three school bus stop sentence enhancements in this case consecutively to each other without following the exceptional sentence provisions of RCW 9.94A.535.

2.      Remedy

In *State v. Rasmussen*, the trial court "imposed consecutive sentences but did not consider whether aggravating circumstances warranted imposition of an exceptional sentence," and this court vacated and remanded for resentencing. 109 Wn. App. 279, 280, 34 P.3d 1235 (2001). In that case, there was no evidence in the record indicating that the trial court had considered an exceptional sentence. *Id.* at 280.

In *Friedlund,* the trial court failed to enter written findings of fact supporting an exceptional sentence, but the trial court's reasons for deviating from the standard range were clear from the record. 182 Wn.2d at 391, 395. The Supreme Court was not willing to excuse the absence of written findings, but held that the remedy was limited to remanding for the trial court to enter findings and conclusions, rather than remanding for resentencing. *Id.* at 395.

This case is like *Rasmussen*, not *Friedlund*. Unlike in *Friedlund*, the trial court in this case did not mention circumstances justifying an exceptional sentence from the bench, nor did the trial court appear to understand that it was imposing an exceptional sentence. The State neither charged nor ever identified a statutory basis for an exceptional sentence under RCW 9.94A.535.

The record does not indicate that the trial court intended to impose an exceptional sentence, nor is it at all clear that there is a basis for an exceptional sentence under RCW 9.94A.535(3). The appropriate remedy is to remand for resentencing, as in *Rasmussen*, rather than simply to remand for entry of written findings of fact and conclusions of law as in *Friedlund.*

B.     DNA Collection Fee

Carson contends that the trial court erred under RCW 43.43.7541 by imposing the DNA collection fee because she was indigent and her DNA had been collected for a prior felony. The record is silent as to whether Carson's DNA was previously collected but the criminal history in her judgment and sentence lists a 1998 felony conviction. Remand is appropriate to allow the State to present evidence that Carson's DNA was not previously collected. The trial court should strike the DNA collection fee unless the State meets its burden.

Under RCW 43.43.7541, the DNA collection fee is not mandatory if the defendant's DNA has already been collected due to a prior conviction. *See also State v. Ramirez*, 191 Wn.2d 732,

747, 426 P.3d 714 (2018). There is no requirement in RCW 43.43.7541 that the prior DNA collection must only have occurred after a specific date. Moreover, under *State v. Houck*, if a defendant has a prior felony conviction, there is a presumption that the State previously collected the defendant's DNA. 9 Wn. App. 2d 636, 651 n.4, 446 P.3d 646 (2019), *review denied*, 194 Wn.2d 1024 (2020). The State has the burden of showing that the defendant's DNA has not been previously collected. *Id.*

Here, Carson had a 1998 felony conviction, and defendants convicted of felonies in 1998 were required to provide DNA samples. LAWS OF 1989, ch. 350, § 4; RCW 43.43.7541. The State has not rebutted the presumption that Carson's DNA was previously collected. Unless the State can rebut this presumption on remand, the trial court's imposition of the DNA collection fee was improper. *Houck*, 9 Wn. App. 2d at 651 n.4.

## II.  PERSONAL RESTRAINT PETITION

Carson filed a pro se PRP dated November 25, 2018, while incarcerated pretrial. Carson's trial began on November 27, 2018. Carson sought to be "released from custody at Grays Harbor County Jail pending trial." PRP at 2. Carson indicated that she had been denied relief by the trial court on November 8, 2018, when the trial court denied her request for pretrial release.

This court granted the State's motion to consolidate this PRP with Carson's direct appeal and appellate defense counsel's motion to represent Carson on this PRP. Counsel did not file supplemental briefing regarding this PRP, nor did counsel otherwise mention Carson's PRP arguments in briefing. Neither Carson nor counsel moved to withdraw the PRP.

Although some of the issues in Carson's pretrial PRP are now moot, other issues are relevant to the validity of her conviction and can still be resolved by this court. We therefore conclude that some issues are moot and otherwise deny the PRP.

A.      Moot Issues

        1.      Preservation of evidence supporting probable cause declaration

Carson argues that the evidence of a syringe containing brown liquid, which was discussed in the prosecutor's declaration of probable cause supporting the first two informations and the arrest warrant, was not tested or preserved. These issues are moot because the relief Carson sought was to be released pretrial due to lack of probable cause and that relief can no longer be provided. *See State v. Gentry*, 125 Wn.2d 570, 616, 888 P.2d 1105 (1995). To the extent Carson argues the detectives' failure to preserve the syringe impacted her trial and conviction, this argument is also moot because the possession of heroin charge was dropped before trial.

        2.      Failure to hold preliminary hearing to establish probable cause

Carson argues that she was denied a preliminary hearing to determine whether probable cause existed to support the charges against her. She also appears to argue in the alternative that if a preliminary hearing did occur, she was improperly denied the opportunity to review the evidence against her and cross-examine witnesses at that hearing. These issues are also moot because Carson has since been convicted at a jury trial by proof beyond a reasonable doubt, so there is no effective relief this court could provide postconviction regarding this pretrial issue. *See id.*

B.      Issues Reviewed on the Merits

        1.      PRP standards

To obtain relief, a personal restraint petitioner must establish that their restraint was the product of either a constitutional error that caused "actual and substantial prejudice" or a nonconstitutional fundamental defect that "'inherently result[ed] in a complete miscarriage of justice.'" *In re Pers. Restraint of Swagerty*, 186 Wn.2d 801, 807, 383 P.3d 454 (2016) (quoting *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 810-12, 792 P.2d 506 (1990)).

A petitioner must "state with particularity facts which, if proven, would entitle [them] to relief" and identify the evidence supporting the factual allegations because "[b]ald assertions and conclusory allegations will not support the holding of a hearing." *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992); *see also* RAP 16.7(a)(2)(i). If the allegations are based on matters outside the existing record, the petitioner must demonstrate competent, admissible evidence to establish the facts entitling them to relief. *Rice*, 118 Wn.2d at 886.

        2.      Time for trial issues

Carson argues that her "speedy trial rights" were violated because she was not brought to trial for 84 days and she never waived this right. PRP at 3. Carson also appears to argue that the trial court erred by not reporting her untimely trial to the Administrative Office of the Courts under CrR 3.3(a)(6).

Under CrR 3.3(b), a defendant who is in jail must be brought to trial within 60 days of arraignment. Under CrR 3.3(c)(2)(vii), disqualification of counsel restarts the clock for calculating the 60-day period. CrR 3.3(a)(6) instructs the trial court to report untimely trials to the Administrative Office of the Courts.

Carson was brought to trial within the time for trial provided in CrR 3.3(b)-(c). Carson was arraigned on September 10, 2018. On October 1, 2018, Carson's initial trial counsel withdrew because counsel was disqualified due to a conflict of interest. Counsel's disqualification created a new commencement date for the CrR 3.3 60-day rule. CrR 3.3(c)(2)(vii). Carson's trial began fewer than 60 days later on November 27, 2018. Because Carson's trial was not untimely, there was also no reporting error under CrR 3.3(a)(6).We hold that Carson has not made a prima facie showing of error with regard to this claim.

3.　　　Failure to hold a CrR 3.5 hearing

Carson argues that she requested but never received a CrR 3.5 hearing. CrR 3.5(a) requires that "[w]hen a statement of the accused is to be offered in evidence," a hearing must be held to "determin[e] whether the statement is admissible." Here, the State offered testimony from the detectives about statements that Carson made to them. It appears from the detectives' testimony that they talked to Carson at her home and at the jail, and there is testimony that she was advised of her *Miranda*[1] rights only before the conversation at the jail. Ramirez testified that Carson denied that she sold drugs but pointed out where her bedroom was located, which was where the detectives found methamphetamine pipes and the syringe. Later, Rathbun testified that Carson denied selling drugs but said that someone else who stayed at her home sold drugs.

Even if we were to find that admission of these statements was error, an issue we need not decide, Carson would need to show that actual and substantial prejudice arose from the alleged error to prevail on this claim. Carson has not offered competent and admissible evidence to show that the admission of any statements she made to the detectives prejudiced her. The State's

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

evidence about her sales of methamphetamine to the confidential informant, including unrebutted testimony from the informant and multiple law enforcement witnesses, was overwhelming and this evidence did not involve evidence found in Carson's bedroom. The possession of heroin charge was dropped prior to trial. Thus, Carson fails to show actual and substantial prejudice with regard to this claim.

    4.    Ineffective assistance of counsel

Carson appears to argue that she received ineffective assistance of counsel because her trial counsel sought to withdraw, tried to pressure her into pleading guilty, left her to defend herself, and "poor representation by counsel has [risen] to the level of a constitutional violation." PRP at 12.

Carson has offered no more than these bald assertions of ineffective assistance. *See Rice*, 118 Wn.2d at 886; RAP 16.7(a)(2)(i). She has not provided evidence or demonstrated that particular facts exist sufficient to establish that her counsel's representation fell below an objective standard of reasonableness, and she has not offered evidence establishing that her counsel's performance prejudiced her. We hold that Carson has not made a sufficient showing of deficient performance or actual and substantial prejudice with regard to her trial counsel's preparation for trial.

    5.    Other constitutional issues

Carson appears to argue that her Sixth Amendment rights under the United States Constitution were violated by the trial court, the prosecuting attorney, her defense counsel, and the drug task force officers who investigated her. A mere assertion of error in a PRP, without more, will not support relief. *Rice*, 118 Wn.2d at 886. Because Carson does not support this argument

with particular evidence supporting her allegations, we hold that she has not made the necessary showing of error. We conclude that none of the remaining issues raised in Carson's PRP warrants relief.

## CONCLUSION

We vacate the imposition of the three school bus stop sentence enhancements to the extent the trial court imposed them consecutively to each other. We remand for resentencing in accordance with RCW 9.94A.589 and RCW 9.94A.535 and for reconsideration of the DNA collection fee. The probable cause issues raised in Carson's PRP are moot and we otherwise deny the PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Lee, C.J.

Maxa, J.